OPINION OF THE COURT
Anthony J. Paris, J.
The court will not reiterate the underlying facts and history of this lawsuit. Suffice it to say that after granting defendants’ motion to amend their answer to assert the affirmative defense of discharge in bankruptcy and denying their motion for summary judgment on that defense, this court ordered discovery to allow plaintiffs to ascertain the due diligence of defendants’ risk management office in reviewing, designating and notifying all possible claimants, and the plaintiffs in particular, during the period prior to the bankruptcy bar date.
Defendants never appealed this decision. However, discovery was stayed pending a motion by defendants in bankruptcy court, which motion was ultimately withdrawn.
Plaintiffs now move to compel discovery as set forth in their moving papers. Defendants have refused to comply with plaintiffs’ discovery demands and cross-move for a protective *437 order on the basis that the information sought by plaintiffs is privileged and confidential, irrelevant and overbroad in its scope. Defendants further oppose Dr. Megan Crittendon’s personal appearance in Syracuse as it would constitute or impose a hardship on this physician as she has relocated to Indianapolis.
The court begins with the easy one. Dr. Crittendon is a named defendant in this case, and if this matter goes to trial, it will ultimately be necessary for her to come to Syracuse and remain here during the course of the trial, which can be expected to last one to two weeks. While defendants point out that the doctor is a single mother, the court notes that she and her ex-husband alternate physical custody of the children, so this should not present a problem to this defendant if she were to come to Syracuse for a deposition.
The court takes judicial notice that in-person depositions are best for both the witness and the examiners. Therefore, the choice is left to the defendants. Defendants can either produce the doctor here in Syracuse at their expense or at the expense of Dr. Crittendon; or the doctor may be personally deposed in Indianapolis by plaintiffs’ counsel and defendants will pay for counsels’ reasonable expenses, including but not limited to flights, accommodations, meals, transportation and costs related to where the deposition takes place. Plaintiffs will be responsible for the cost of the deposition transcript.
With regard to that branch of the plaintiffs’ motion seeking disclosure and production of the certain identified hospital reports and data, plaintiffs contend that due to the traumatic birth injuries of the infant plaintiff, an incident report was required and defendants had a duty to report to the State Department of Health. Plaintiffs further contend that such report would or should have put defendant hospital on notice of a potential malpractice claim such that the defendant hospital needed to report same to the bankruptcy court which would have directed defendant hospital to notify plaintiffs of their rights under the bankruptcy trust. According to the plaintiffs, discovery regarding this issue of notice and due diligence is totally relevant, and the parties themselves, or with the court’s assistance, can formulate disclosure protocol as to where it is to be produced and any necessary redactions.
Defendants, in opposition to plaintiffs’ motion and in support of their cross motion for a protective order, contend that Public Health Law §§ 2805-j and 2805-Z require incident reports and *438 peer review reports concerning reportable occurrences, and while such reports must be filed with the New York State Department of Health, they are privileged and confidential pursuant to Public Health Law § 2805-m and Education Law § 6527 (3). Defendants argue that such reports are not subject to disclosure no matter what purpose a party seeks to utilize them for. Defendants rely heavily on the holdings of Lilly v Turecki (112 AD2d 788 [4th Dept 1985]) and Crea v Newfane Inter-Community Mem. Hosp. (224 AD2d 976 [4th Dept 1996]).
Regardless of the privileged and confidential nature of such reports, defendant hospital maintains that after a thorough search of its records, it found no trackable occurrence reports, no reportable occurrence reports, no peer review reports, no root cause analysis reports or any reports concerning plaintiff mother or plaintiff child except for an innocuous report of a medication error.
The fact that a cesarean-section birth such as the one at issue here would generate no reports except for a medication error not only shocks the conscience but also borders on an insult to the intelligence of the court. The facts before the court relative to this cesarean section are that initially an attempt was made to suck the child down the birth canal by vacuum extraction. The child was ultimately delivered blue, with an epidural bleed, skull fractures and suffered immediate seizures. Moreover, defendant hospital’s flow chart evidences 10 or 11 individuals who, by hospital regulations, were obligated to make an incident report.
This court is personally cognizant of defendant hospital’s reputation as a premier venue for care and treatment of traumatic birth complications, and this position by defendant’s administrative staff is totally inconsistent with this defendant’s reputation.
The bankruptcy of defendant Crouse creates a unique and novel situation as concerns this notice and due diligence issue. Therefore, normal privileges and safeguards are not applicable to this limited issue.
This discovery is necessary as to what defendant knew or should have known about this traumatic birth and whether or not in the exercise of due diligence a report should have been made to the bankruptcy court so as to protect the rights of plaintiffs and others in a similar situation.
The fact that defendant hospital cannot find any reports on a birth as traumatic as that of this infant plaintiff calls into ques *439 tion the possibility that a number of other claimants may have gone unnotified due to defendant’s lack of due diligence.
The statutory purpose behind the veil of privilege and confidentiality afforded by Public Health Law § 2805-m and Education Law § 6527 (3) is to promote the health, comfort, safety and welfare of the community at large without fear of legal reprisal. (Health Ins. Assn. of Am. v Harnett, 44 NY2d 302 [1978].)
Peer review analysis promotes general health care. Confidentiality is mandated in order to encourage participation in such a review process. Therefore, such reports are not subject to disclosure pursuant to article 31 of the CPLR for use by a plaintiff in substantiating a cause of action for medical malpractice.
In this unique case, plaintiffs seek discovery not to establish a possible medical malpractice case, but for the limited purpose of notice and due diligence as it applied to defendant’s risk management procedures relative to the bankruptcy scenario.
Defendants, in order to secure a protective order, would have to show that the reports they seek to shield were prepared in accordance with the statutory procedure, and also that disclosure of same would frustrate the purposes underlying the statutory privilege. (Pal v New York Univ., 2007 WL 4358463, 2007 US Dist LEXIS 91051 [SD NY 2007]; Ryan v Staten Is. Univ. Hosp., 2006 WL 1025890, 2006 US Dist LEXIS 18982 [ED NY 2006].) Defendants have not shown a frustration of the statutory policy in this particular matter.
Therefore, by reason of the foregoing, plaintiffs’ motion is granted subject to redaction as agreed upon by counsel for the parties.
Defendants’ cross motion is denied in part and granted in part. It is denied in that the items sought by plaintiffs are to be produced with the arrangements for said production to be agreed upon by counsel. It is granted in part in that any reports or materials generated by the Public Health Law or Education Law are to be utilized for the limited purpose of notice and due diligence concerning the bankruptcy proceeding and not to establish any claim of medical malpractice by defendants in conjunction with the infant plaintiffs birth.